IVY INTERNATIONAL, LTD., PLAINTIFF  *v.* UNITED STATES, DEFENDANT

Court No. 79-9-01390

(Dated August 3, 1984)

Before RAO, *Judge.*

---

[7] It should be noted that the ITC in its report took pains to define the scope of the affected domestic industry. The principal concern was whether the fresh mushroom industry should be included within the ambit of the investigation. Fully one-third of the Report analyzes this issue. To the court, this evinces the ITC's awareness of and sensitivity to the scope issue. The court is not convinced that, after carefully considering the definition of the relevant domestic industry, the ITC blithely dismissed the frozen segment of that industry.

*Murray Sklaroff* for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph Liebman,* Attorney in Charge, International Trade Field Office *(Susan Handler-Menahem* on the brief) for the defendant.

RAO, *Judge:* This case is before the court on plaintiff's motion for a rehearing and to set aside the decision in favor of the defendant holding that the merchandise, fabric, in issue is in chief value of man-made fibers as determined by the United States Customs Service, and not in chief value of rabbit hair as claimed by the plaintiff. Plaintiff asks the court to reconsider its evaluation of the financial data submitted as part of plaintiff's brief and its evaluation of the testimony of defendant's witnesses, particularly with regard to the value of the rabbit hair.

It was the testimony of plaintiff's witness, Dr. Cecchi, that the rabbit hair used in the manufacture of the fabric in question was taken from the shoulders of the rabbit rather than from the legs or stomach of the animal and that it was white. This would make it of the highest quality and therefore more expensive than lower grade rabbit hair.

The testimony of defendant's witnesses, supported by laboratory reports of analyses conducted at the United States Customs Laboratory in New York, established that the rabbit hair taken from the official samples of the merchandise was brown or gray, and of low grade. The dichotomy between this testimony and evidence and that of plaintiff's witness was not explained by the plaintiff, whose legal duty it is to rebut the presumption of correctness which attaches to the Customs classification and who can prevail only if the preponderance of the evidence shows a factual and legal situation which will enable the court to determine that his claim should be sustained. *United States* v. *Magnus, Mabee & Reynard, Inc.,* 39 CCPA 1, 7, C.A.D. 455 (1951).

It is plaintiff's position that it made out a *prima facie* case through the testimony of Dr. Cecchi, who testified as to the cost of the various fibers prior to their being woven into a fabric. The question on this motion for rehearing is whether the *prima. facie* case established by the plaintiff was rebutted by the defendant.

It is this court's decision that the *prima facie* case was rebutted by the defendant.

In its memorandum in support of its motion for rehearing, plaintiff takes issue with the court's interpretation of the cost of production data submitted as part of its post-trial brief. Even assuming, *arguendo,* that the figures provided were properly arrived at through the use of accepted accounting principles, the figures provided do not reflect the testimony of the witness. The data in the chart provides for a 25% addition of rabbit hair to compensate for loss during blending. The testimony of plaintiff's witness, Dr. Cecchi, established that at most a 15% addition of rabbit hair was

made to compensate for this loss. Additionally, Dr. Cecchi testified as to the cost of white rabbit hair from the shoulders being 8,000 to 8,500 lire per kilogram. However, the analysis of the fabric by the Customs laboratory personnel who testified at the trail established that much of the rabbit hair used in the fabric was gray or brown and of poor quality. There was no rebuttal evidence to this testimony and it has probative weight.

It is the burden of the plaintiff to prove its case by the preponderance of the evidence, and the evidence must be credible. *A. Millner Co.* v. *United States,* 46 CCPA 97, 100, C.A.D. 706 (1959). Many doubts remained, after all the testimony was heard, as to whether only white rabbit hair was used in manufacturing the fabric at issue, particularly since the plaintiff did not have invoices for white rabbit hair to cover more than approximately one-eight of the rabbit hair that was used.

Thus, the financial data statement does not reflect the testimony of the witnesses and the invoices for white rabbit hair do not lead to the conclusion that only white rabbit hair was used in the manufacture of the fabric. Indeed, based on the testimony of the government witnesses, the conclusion can be drawn that *some* white rabbit hair was used, but some other rabbit hair of lesser quality was also used. Since plaintiff has not provided the court with cost data of the fabric in which gray or brown rabbit hair was utilized as well as some white rabbit hair, it is not possible to arrive at a determination as to the cost of the component fibers of the imported fabrics without resorting to conjecture.

A rehearing is proper only where there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of new evidence which was not available at the trial, even in the exercise of due diligence, or an occurrence at trial in the nature of accident, surprise, or unavoidable mistake impairing the adequate presentation of the case. *W.J. Byrnes & Co., Inc.* v.. *United States,* 68 Cust. Ct. 358, C.R.D. 72–5 (1972). None of these factors are present in this case. Plaintiff had every opportunity to present its case and to rebut the defendant's evidence. It has not asked the court to consider any new or additional evidence that was not available at the time of trial.

We turn next to the question of whether the classification by the Customs Service should stand. The fabric in issue is admittedly of acrylic, polyester, wool and rabbit hair, with the wool fibers constituting such a slight amount of the fibers that they were not even calculated in plaintiff's cost analysis. It can, therefore, be concluded that the remaining fibers, the acrylic and the polyester, were those components which constituted the chief value of the merchandise. That acrylic and polyester fibers are man-made fibers is not susceptible to doubt.

It is, accordingly, the decision of this court that the classification of the merchandise by the Customs Service under item 338.30 of

the Tariff Schedules of the United States, as woven fabrics of man-made fibers, containing not over 17% of wool by weight and not of glass, and assessed with duty at the rate of 13 cents per pound and 22.5% ad valorem, was correct.